UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ROBERT L. MORRIS, )<br>)<br>    *Petitioner,* )<br>)<br>v. )<br>)<br>HOWARD CARLTON, WARDEN )<br>)<br>    *Respondent.* ) | No.   1:04-cv-247<br>        *Mattice/Lee* |

## **M E M O R A N D U M**

Robert L. Morris ("Morris" or "petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Court File No.3]. Respondent Howard Carlton, ("Respondent") Warden of the facility where Morris is housed, filed a Renewed Motion to Dismiss [Court File No. 17]. Petitioner filed an objection to the motion to dismiss [Court File No. 23].

After considering the filings of Respondent and Petitioner, the record of the state proceedings, and the applicable law, the Court will **GRANT** Respondent's Renewed Motion to Dismiss [Court File No. 17] and will **DISMISS** Petitioner's § 2254 petition [Court File No. 3].

In 1988 Morris was convicted by a jury of two counts of aggravated sexual battery, three counts of aggravated rape, two counts of assault with intent to commit sexual battery, and one count of assault and battery. He now petitions this Court for review of his conviction on Count Nine for aggravated rape. He bases his request for relief on a claim of prosecutorial misconduct.[1]

---

[1] The Sixth Circuit granted Morris permission to file a second or successive petition to raise a prosecutorial misconduct claim [Court File No. 12].

This is Morris's second petition for federal habeas relief challenging his 1988 conviction and sentence for aggravated rape. Morris attacked all of his 1988 convictions, which included an attack on this conviction for aggravated rape, in his first habeas corpus petition. In his first habeas petition, Morris complained of ineffective assistance of counsel and claimed that he was twice put in jeopardy because counts 9 and 10 of the indictment were identical. Petitioner's first petition for federal habeas corpus relief was dismissed on the basis of procedural default. *Robert Morris v. Charlie Jones*, *Warden,* Civil Action No. 1:96-cv57 (E.D. Tenn. 1997).

The Antiterrorism and Effective Death Penalty Act of 1996 requires a petitioner to obtain permission of the United States Court of Appeals for the Sixth Circuit for an order authorizing this Court to consider the petition. 28 U.S.C. § 2255(b)(3); *see also Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1066 (6th Cir. 1997). Because Morris filed his second or successive petition for habeas corpus relief in the district court without such authorization from the Sixth Circuit,, this Court transferred the documents to the Sixth Circuit pursuant to 28 U.S.C. § 1631.

The Sixth Circuit, reading Morris' petition liberally, viewed his claim as one that the prosecutor knowingly used perjured testimony. The Sixth Circuit granted "the motion seeking permission to file a second or successive petition because the proposed claim, as we here construe it, alleges constitutional error *at trial* and otherwise meets the new-evidence requirements of 28 U.S.C. § 2244(b)(2)(B). Morris may raise the foregoing claim of prosecutorial misconduct." [Court File No. 12].

2

Presently before this Court for review is Morris' conviction on Count Nine for aggravated rape. Morris bases his claim for relief on the contention that the prosecution elicited false testimony from Eric McLemore ("McLemore"). Although this claim has been defaulted because Morris failed to timely exhaust it in state court, Morris now attempts to avoid the consequences of that default based upon the Sixth Circuit's finding that the error at trial meets the new-evidence requirements of 28 U.S.C. § 2244(b)(2)(B).

I.      **STANDARD OF REVIEW**

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States District Courts, the Court is to determine - after a review of the response, the transcript, record of state court proceedings, and the expanded record - whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the case as justice dictates. After carefully reviewing the appropriate documentary materials, the Court finds it unnecessary to hold an evidentiary hearing.

Federal courts review decisions of the state courts pursuant to 28 U.S.C. § 2254(d), a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute delimits the scope of a federal district court's jurisdiction to review habeas claims on the merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2)

3

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004); *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).

## II.  **PROCEDURAL HISTORY**

The procedural history of this case is extensive. Petitioner was arrested in 1988 after being indicted on five counts of aggravated rape, six counts of aggravated sexual battery, and three counts of crimes against nature. Later that year petitioner was convicted of two counts of aggravated sexual battery, three counts of aggravated rape, two counts of assault with intent to commit sexual battery, and one count of assault and battery. After sentencing petitioner as a range one offender, the trial court, on April 27, 1989, entered an order changing the defendant's convictions on counts two and three of the indictment from aggravated rape to aggravated sexual battery, and altered the sentences previously imposed on those counts.

On appeal, the Court of Criminal Appeals of Tennessee reversed petitioner's convictions as to counts two and three of the indictment and remanded those counts for a new trial. *See State v. Morris*, 788 S.W.2d 820, 823-24 (Tenn. Crim. App. 1990). Subsequently, and after being granted an extraordinary appeal from the Hamilton County Criminal Court for review of his claim that the Double Jeopardy Clause barred his retrial

4

on counts two and three, the Court of Criminal Appeals of Tennessee dismissed those two charges. *See State v. Morris*, 1991 WL 241156 at *7 (Tenn. Crim. App. 1991).

Petitioner filed a state post-conviction petition in 1993, claiming he received ineffective assistance of counsel. The trial court denied relief, as did the Court of Criminal Appeals. *Morris v. State*, 1995 WL 390953 (Tenn. Crim. App. July 5, 1995). The petitioner did not seek permission to appeal the appellate court's post-conviction decision to the Tennessee Supreme Court. Instead, on February 20, 1996, he timely filed a federal habeas petition which was dismissed on March 12, 1997. Although petitioner filed a notice of appeal from the dismissal of his federal habeas petition, the Sixth Circuit dismissed the appeal in August of 1997 for lack of prosecution.

Petitioner did not pursue any other legal remedies until January 10, 2003, when he filed a petition for habeas corpus relief in state court. The petition was dismissed, however, on the grounds that his claims were not cognizable in a state habeas corpus petition. That dismissal was affirmed by the Court of Criminal Appeals. *Morris v. Carlton*, 2004 WL 1267565 (Tenn. Crim. App. June 9, 2004). Then petitioner, claiming one of the victims, Eric McLemore (who is now an adult and was incarcerated in the same facility as petitioner in September of 2002), had recanted his testimony, filed the instant federal habeas petition. This Court transferred the petition to the Sixth Circuit and on July 13, 2005 that court authorized the filing of this second petition "because the proposed claim, as we here construe it, alleges constitutional error at trial and otherwise meets the new-evidence requirements of 28 U.S.C. § 2244(b)(2)(B). Morris may raise the foregoing claim of prosecutorial misconduct." [Court File No. 12].

5

## III.  FACTUAL BACKGROUND

Petitioner, a mature high school graduate with some college training, organized a tumbling group for young boys in 1972. The size of the group varied over the years. As a school bus driver and leader of the tumbling group, petitioner was perceived as a positive role model. That status afforded him access to young boys in the local community. Petitioner fulfilled a "father figure" role for these boys as all of them came from homes with no father. As leader of the tumbling group, petitioner selected the team members. This placed him in a position to identify his potential victims and nurture a relationship with them. The defendant provided the young boys on the team with positive reinforcement and a sense of self esteem by reason of their tumbling activities. Due to his position, the mothers of team members permitted their sons to visit the petitioner in his home, where they participated in watching television, playing Atari games, and jumping on trampolines. *State v. Morris*, 788 S.W. 2d 820, 822 (Tenn.Crim.Apps. 1990).

According to testimony, the incidents which ultimately resulted in criminal charges occurred while the victims were alone with petitioner, either in his bedroom or in another room of his house. Petitioner was indicted on charges of aggravated rape or aggravated sexual battery against nine young males who were members of his tumbling group at one time or another. Petitioner was thirty-six years old at the time of trial. The victims were less than thirteen years of age at the time of the alleged acts, which occurred over a four year period.

The trial testimony showed petitioner had numerous sexual contacts with the victims, including kissing and fondling them. In addition, acts of fellatio and anal

6

intercourse were committed upon some of the victims. *See Id.* at 822. The Tennessee Court of Criminal Appeal explained petitioner's general *modus operandi*:

> The defendant would begin his molestation of the victims by playful kissing, fondling, and other inappropriate touching. He was careful not to frighten the victims when they would object, and he would stop, not force them to participate, and would let time pass. By these manipulative actions, he would then later entice his victims into engaging with him in more sordid homosexual acts, such as fellatio and anal intercourse.
>
> The defendant would use sexual games, including the use of lotion, to try to relax the victims in an attempt to make the experience less offensive. He told some of his victims not to tell on him, and that if they did they would get him in trouble. He threatened one of the victims that if he told on him he would "turn" him on his head, and told another he would "spin" him on his head.

*State v. Morris*, 788 S.W.2d 820, 822-23 (Tenn. Crim. App. 1990).

Eric McLemore ("McLemore"), the victim of the aggravated rape case which gives rise to this habeas petition, has submitted an affidavit stating that his trial testimony was untrue. At petitioner's trial he testified to several incidents of sexual abuse. McLemore, the recanting victim, testified that he joined petitioner's tumbling group when he was ten years old. He testified the first incident of abuse occurred when petitioner was driving a school bus on which he was riding and petitioner took him to petitioner's house. The victim took a nap at petitioner's home and when he woke up the petitioner was on top of him [Addendum No. 8, Vol. 3, at 295-300]. McLemore was naked, laying on his stomach, and petitioner had his penis in the victim's anus. According to McLemore, he bit petitioner on his shoulder and ran [Addendum No. 8, Vol. 4, at 301-02].[2]

---

[2] The Court observes that McLemore's trial testimony was substantially different than the statement he gave to Detective Pedigo [Addendum No. 8, Vol. 9, Statement of Eric Dewayne McLemore]. However, McLemore was not challenged on the difference between the version of events in his initial statement and his trial testimony. Nevertheless, petitioner was put on notice at that time of the discrepancies in McLemore's

McLemore testified that on another occasion, petitioner invited the victim to his house, telling him the whole team was there. McLemore went to petitioner's house and started putting on a gymnastic suit as instructed by Morris. After he had done so, the petitioner taped his hands, threw him down, got on top of him, and engaged in anal sex. The victim testified that petitioner put his penis in the victim's mouth and the victim bit it [Addendum No. 8, Vol. 4, at 303-04]. On another occasion, when they went to Six Flags, petitioner tried to make the victim have oral sex with him while they were in the van and told the victim if he did not do it, then he would have to walk home. On another occasion, according to McLemore, the recanting victim, petitioner told him to take his clothes off or he would get the belt. In response, victim took off his clothes and petitioner told the victim to have anal sex with him and the victim tried to do so [Addendum No. 8, Vol. 4, at 308-09]. On cross examination, McLemore admitted he had called petitioner and told him he wanted five thousand dollars or he would tell on petitioner [Addendum No. 8, Vol. 4, at 310].

Detective Pedigo testified that McLemore's mother took him to the Department of Human Services, where he told Detective Pedigo that petitioner abused him on two occasions. As with most of the other victims, there was no medical proof to support his claim. Detective Pedigo testified that this victim claimed the petitioner bound him with tape [Addendum No. 1, Vol. 2, at 56-57]. In addition, while executing a search warrant on petitioner's home, Detective Pedigo heard a recording on petitioner's answering machine in which McLemore, who admitted to Detective Pedigo that he left the message, accused

---

testimony.

petitioner of having sexual contact with his cousin and requested payment of $500.00 [Addendum No. 1, Vol. 2, at 71-72].

IV. **ANALYSIS**

In challenging his conviction for aggravated rape of McLemore, petitioner Morris claims that he was denied his constitutional right to due process and equal protection when the prosecutor knowingly suborned perjury from McLemore. Petitioner contends that on September 12, 2002, McLemore, who was incarcerated at the same penal facility, informed him that he (McLemore) was bribed, coerced, and threatened by employees in the District Attorney's Office to give false testimony against petitioner. Morris has filed an affidavit purportedly signed by McLemore, which states that he (McLemore) gave false testimony during Morris' trial, and further states such false testimony was authorized by the prosecuting attorney in exchange for monetary compensation and release from custody on an unrelated offense. McLemore avers that petitioner did not commit any act to which he testified and petitioner never harmed him in any way [Court File No. 3, Affidavit]. Based on Morris' petition and McLemore's averments in his affidavit, the Sixth Circuit has authorized petitioner to proceed on his second or successive habeas petition raising the claim of prosecutorial misconduct.

Because this is Morris' second or successive application for habeas relief, before this Court can address his claim of prosecutorial misconduct, it must first determine whether his claim meets the requirements for filing such a second application. *See* 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or

9

successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section"[3]).

There is a two-prong test to be applied in making that determination. *See* 28 U.S.C. § 2244(b)(2)(B). The first prong requires Morris to show that "the factual predicate for his claim could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B)(i). Since, as explained below, Morris is unable to meet the due diligence prong of the test identified in 28 U.S.C.§ 2244(b)(2)(B)(i), the Court need not consider the second prong of the test identified.

An inquiry into "due diligence" has several steps. The Court's first task is to determine whether and, if so when, a diligent petitioner in Morris' circumstances would have discovered that the prosecutor suborned perjury. After such a "discovery date" has been established, the Court must next determine whether the petition was filed within one year of that date. The due diligence requirement is considered in light of the totality of the circumstances, including a petitioner's confinement in prison.

The record reflects that McLemore's credibility has been at issue throughout the proceedings in petitioner's case. There was testimony at petitioner's 1988 trial that shortly after McLemore made his allegations to law enforcement, his cousin told a witness that they were both lying. (Both McLemore and his cousin testified that Morris had sexually abused them). Morris was thus put on notice of allegations that McLemore was not being truthful when this witness testified at trial [Addendum No. 8, Vol. 5, at 457-59].

---

[3] The term "this section" is a reference to 28 U.S.C. § 2244(b)(2)(B).

10

Moreover, after being convicted, Morris filed a motion to amend his motion for new trial, relying upon McLemore's alleged recantation of at least a portion of his trial testimony. Morris specifically claimed he had newly discovered evidence that "Eric McLemore, stated to the Assistant District Attorney, Stan Lanzo, that he did in fact lie while he was on the witness stand." [Addendum No. 8, Vol. 1, at 123]. Accordingly, shortly after the trial, Morris was aware of McLemore's alleged recantation to the prosecutor.

Having established that Morris was aware of the recantation, the Court must now determine when a diligent petitioner in Morris' circumstances would have discovered the facts underlying his claim of prosecutorial misconduct as based on the affidavit signed by Eric McLemore notarized on September 18, 2002 and attached to Morris' petition. In the affidavit, McLemore, who was incarcerated in the same prison as his abuser, swore that his trial testimony implicating petitioner was false and that the prosecutor knew he was going to lie under oath.[4]

As to whether Morris, acting diligently, could have obtained McLemore's affidavit to this effect, the Court finds as follows. McLemore was not an unknown or undiscoverable

---

[4]

Although "[a] false-testimony claim is cognizable on federal habeas review because the 'deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice'"*Abus-Samad v. Bell*, 420 F.3d 614, 625 (6th Cir. 2005) *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972), the recanting of trial testimony by prosecution witnesses is typically viewed with the "utmost suspicion." *Bower v. Curtis*, 118 Fed.Appx. 901, 908 (6th Cir. 2004) *citing Hence v. Smith*, 37 F. Supp. 2d 970, 981 (E.D. Mich. 1999) (quoting *United States v. Kearney*, 682 F.2d 214, 219 (D.C. Cir. 1982)). Motions for new trial based on the recantation of a material witness are viewed with suspicion because "[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial." *United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir.1997). This skepticism "is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon," particularly "when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story." *United States v. Provost*, 969 F.2d 617, 621 (8th Cir.1992), *cert. denied*, 506 U.S. 1056, 113 S.Ct. 986, 122 L.Ed.2d 139 (1993); *United States v. Rouse,* 410 F.3d 1005, 1009 (8th Cir. 2005)

witness. The recantation of his testimony was likewise not unknown or undiscoverable. Morris had sufficient opportunity during trial to cross-examine McLemore so as to discover whether, as he avers in his affidavit, he was released from custody on an unrelated charge, at the instance of the prosecutor, in exchange for his testimony. Similarly, immediately after the trial and prior to the filing of his motion to amend his post-trial motion, Morris also had sufficient opportunity to discover the circumstances surrounding McLemore's recantation.[5] Accordingly, the Court finds that this information, had Morris acted with due diligence, could have been discovered, at the latest no later than February 10, 1989, the date on which Morris filed his motion to amend his motion for new trial, and well before September of 2002, the date of McLemore's affidavit.

The Court cannot help but note that the absence of McLemore's affidavit did not prevent Morris from pursuing state relief on this same ground in a timely manner. The due diligence requirement does not permit petitioner to delay raising the claim so he can gather every possible piece of evidence that might support his claim. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). At any rate, Morris does not assert that he has attempted to obtain this evidence in the past, nor does he explain why he has failed to raise this claim earlier, within the statutory period mandated by AEDPA. *See* 28 U.S.C. § 2244(b)(2)(B)(I).

---

[5] In Morris' late-filed second response to respondent's motion to dismiss [Court File No. 26] he maintains the factual claims could not have been discovered previously through the exercise of due diligence because McLemore refused to speak with trial counsel and Morris' was instructed by the court not to contact the victims. This argument is unpersuasive. McLemore's trial counsel and previous state post-conviction counsel could have obtained the evidence by other means, such as by deposition or issuing a subpoena for McLemore's appearance in court.

12

In the absence of evidence to suggest the claim could not have been discovered through due diligence, and with evidence suggesting petitioner had the relevant facts within the limitation period, the Court must assume the petition could have been filed on a timely basis. Consequently, Morris has not demonstrated that, exercising due diligence, he was unable to discover the facts supporting his claim that the prosecutor knowingly presented false testimony.

The Court concludes Morris was not diligent in discovering the facts supporting the claim of prosecutorial misconduct; that Morris is not entitled to habeas relief on his claim; and that it must be **DISMISSED**.

## V. CONCLUSION

Respondent's renewed motion to dismiss [Court File No. 17] will be **GRANTED** as to all claims. Petitioner is not entitled to an evidentiary hearing, and his § 2254 petition [Court File No. 3] will be **DISMISSED**.

A judgment will enter.

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
